**William BYRD, Plaintiff,**

v.

**CITY OF ATLANTA, et al., Defendants.**

**No. 1:88–CV–2307–RHH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Feb. 17, 1989.

See also 683 F.Supp 804.

Ralph S. Goldberg, Atlanta, Ga., for plaintiff.

Marva Jones Brooks, Overtis L. Hicks, Brantley Oliver Richardson & Hunter, W. Roy Mays, III, Fortson & Mays, Atlanta, Ga., for defendants.

## ORDER

ROBERT H. HALL, District Judge.

This section 1983 action arises from plaintiff's alleged suspension without pay and subsequent termination from his position as a detective in the Atlanta Bureau of Police Services. Plaintiff contends that defendants' actions have violated his rights under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the United States Constitution, violated his rights under the Georgia Constitution and violated a local ordinance. The case is now before the court on plaintiff's motion for partial summary judgment.

FACTS

The facts before the court surrounding the incidents which prompted plaintiff's suspension and termination are somewhat sketchy. Most of the facts are gleaned from a very poorly transcribed hearing before the Civil Service Board, Plaintiff's Exhibit D to Motion for Summary Judgment, and from plaintiff's own statement of June 3, 1985, Defendants' Exhibit F to Reply to Plaintiff's Motion for Summary Judgment.

The court will briefly summarize the incidents which led o plaintiff's arrest, suspension and termination. Sometime prior to February, 1985 plaintiff worked in the Atlanta Police Department with former detective W.F. Watkins; they were partners. It seems that Watkins was an active drug dealer while on the force and was terminated from the department when the GBI uncovered his narcotics dealings. Byrd apparently came under some suspicion after Watkins' activities were discovered, and after an informant raised some concerns about Byrd to the Department. The GBI then devised a plan whereby they attempted to expose detective Byrd's involvement in illegal drug activities. The GBI put an undercover agent on the street who posed

as a drug dealer and went by the name of "Errand" or "Aaron". Byrd's informant, Delores Morgan, who was now helping the Internal Investigations Unit of the Police Department put Byrd in touch with Errand telling Plaintiff that Errand was a big drug dealer.

Errand, posing as a drug supplier, and Byrd, posing as a small time drug dealer, met in the Stadium hotel in Atlanta, Georgia on two occasions in February of 1985 and engaged in "drug transactions". On February 21, Errand gave Byrd one gram of cocaine, as a "sample". Byrd used some of the cocaine for testing and then allowed his informant, Joe Hill, to have possession of the cocaine for a short period of time. While he had possession Hill took some of that cocaine for personal use. Byrd apparently recognized that a portion of the cocaine was missing when Hill returned it to him, but chose to say nothing. Defendants' Exhibit F, p. 4. Eventually, only ⅕ of the original amount of cocaine delivered to Byrd was turned into the crime lab.

On February 28, 1985 Byrd again received cocaine from Errand. This time he purchased ⅛ of an ounce (3½ grams) of cocaine for $250 of his own money.[1] Hill later told Byrd that the quality of the cocaine purchased was very low and asked if he could keep it. Byrd, in an attempt to keep his informant happy, gave Hill the cocaine in exchange for the promise that Hill would pay him the $250 expended when he received some funds for information supplied. Defendants' Exhibit F, p. 4–5. Byrd never reported this drug transaction or accounted for the cocaine he received. Byrd was arrested on or about March 4, 1985 for violating the controlled substances laws of this state.

Byrd was then suspended from the force without pay by the Commissioner of Public Safety effective March 3 or 5, 1985.[2] Plaintiff was thereafter acquitted on all criminal charges pressed in connection with this incident. However, he was none-theless charged with violating 3 work rules of the Atlanta Police Department Rules and Regulations on July 7, 1985. Defendants' Exhibit A, Disciplinary Complaint. On July 10th plaintiff received notice of his hearing before the Administrative Disciplinary Hearing Panel which was subsequently held on July 18, 1985. On July 20, after receiving the Panel's recommendations, the Commissioner of Public Safety terminated the plaintiff from his position in the Atlanta Police Department. The plaintiff then appealed the decision to the Civil Service Board. The appeal was heard before the Board on September 30, 1985. Though the Board sustained the Commission's decision to terminate the plaintiff, they noted in a letter addressed to George Napper dated October 1, 1985 that they thought the penalty, though supported by the evidence, was too harsh. Plaintiff's Exhibit A.

Plaintiff then appealed his termination to the Fulton County Superior Court which denied the petition for certiorari on March 24, 1986.

Plaintiff has now brought this action in Federal Court in the Northern District of Georgia against the City of Atlanta and certain of its officials alleging that he was denied procedural and substantive due process, that he was denied equal protection when he was dismissed from the police department, and that the city violated its own ordinances in not applying progressive discipline in his case.

DISCUSSION

Plaintiff has filed a motion entitled Motion for Partial Summary Judgment; however, the court has not been able to ascertain from plaintiff's motion or memorandum in support thereof what aspect of his complaint he seeks summary judgment on or against which defendant. Though the counts of Plaintiff's complaint are not enumerated, he appears to assert four separate causes of action: 1) He was denied Substantive Due Process in violation of the

---

1. Byrd alleges that there was no money available at the department for drug purchases at the time and that he did not think he would be purchasing cocaine so he did not secure funds from the city.

2. The exact date of effective suspension is in dispute.

14th Amendment, 2) He was denied Procedural Due Process, 3) His termination violated the Equal Protection Clause of the 14th Amendment in that he was treated differently than those similarly situated, and 4) Defendants violated a city ordinance when they failed to apply principles of progressive discipline in his case.

Since plaintiff does not argue the last two causes of action in his brief in support of Partial Summary Judgment, the court assumes that plaintiff is seeking summary judgment only as to the Due Process elements of his claim. It is also not clear which of the defendants Byrd seeks summary judgment against and nowhere in his brief does he argue in what capacity Redding, Napper, and Derico may be held liable for any due process violation.

DUE PROCESS

Section 1 of the Fourteenth Amendment provides in part:

[N]or shall any State deprive any person of life, liberty, or property, without due process of law.

There is no dispute that detective Byrd had a property interest in his continued employment. See, This court's Order of March 3, 1988, p. 23; *Brownlee v. Williams*, 233 Ga. 548, 551, 212 S.E.2d 359 (1975). Therefore, termination of his employment or his employment benefits requires due process. *Id.* Historically courts have recognized two guarantees embodied in the Due Process Clause of the Fourteenth Amendment—substantive due process and procedural due process. Though the distinction between the two is often blurred, plaintiff has alleged that the City of Atlanta has violated both of these guarantees with respect to his suspension and ultimate termination from the police department.

I. *Substantive Due Process*

Plaintiff alleges that he was denied substantive due process as guaranteed by the 14th Amendment. In *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1951), the Supreme Court explained that substantive due process is violated when government actions "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples ..." 342 U.S. at 169, 72 S.Ct. at 208. Substantive due process claims allege that the governmental conduct would be unjustified even if the most stringent procedural safeguards had been followed. If the government's action were arbitrary and capricious, then no matter what procedures were in place to review that action the plaintiff may assert a substantive due process violation. *Kelley v. Johnson*, 425 U.S. 238, 248, 96 S.Ct. 1440, 1446, 47 L.Ed.2d 708 (1975).

In *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987), the 11th Circuit held:

In determining whether the governmental conduct rises to the level of a constitutional violation the court must look to whether the requirement imposed is rationally related to the legitimate interests of the employer.

833 F.2d at 1513. To ascertain whether there has been a due process violation, this court does not review the case *de novo* to second guess the judgment of the Civil Service Review Board. In this limited substantive review this court must determine whether there was a rational basis for the deprivation of Byrd's property interest in his continued employment. *Holley v. Seminole County School Dist.*, 755 F.2d 1492 (11th Cir.1985).

In the instant case, Plaintiff admitted that 1) he used personal funds to obtain cocaine and made no report of the purchase to the police department and 2) he gave cocaine to his informant and made no report of the incident. Defendants' Exhibit F, p. 3–4. The City has a legitimate interest in assuring that its police officers act in a manner that is consistent with their obligation to enforce the laws of this State. Further, the City has a legitimate interest in making sure that its narcotics investigations are conducted in a manner which will minimize the potential for corruption.

Summary Judgment is appropriate only when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Plaintiff has moved for summary judgment on his claim that he

was denied substantive due process. Viewing the facts which the Civil Service Board had before them when making its determination about plaintiff's employment, plaintiff is clearly not entitled to summary judgment on his substantive due process claim. *Harden v. Allen,* 841 F.2d 1091 (11th Cir. 1988).

## II. *Procedural Due Process*

Plaintiff has also alleged that he was denied procedural due process in his suspension and subsequent termination in three particulars: 1) The city failed to follow City Ordinance 5–34.1 7(b) requiring progressive discipline in certain situations; 2) Plaintiff was given inadequate notice in that the Departmental work rules are vague, ambiguous and capable of discriminatory enforcement, and 3) Plaintiff was not given an opportunity to be heard prior to his suspension without pay on March 5, 1985.

### A. *Progressive Discipline*

■ Plaintiff alleges that Part 5, Chapter 13, Section 7(b) of the Code of City Ordinances creates a right in plaintiff to progressive discipline before dismissal for violation of a work rule. However, the code nowhere mandates that progressive discipline is to apply to every work rule violation. The very language of Ch. 13 7(b) suggests that there are certain offenses to which progressive discipline has no applicability. The ordinance states in relevant part:

"As to offenses for which progressive discipline is applicable, an employee shall not be dismissed until progressive steps of discipline have been taken, without positive results therefrom, and until the employee to be discharged has been presented in writing with specifically stated reason for such discharge."

The progressive discipline section must be read in conjunction with Part 5, Chapter 18, Section 2(2) of the Code of City Ordinances which provides:

The disciplinary action of separation shall be imposed for a single offense when in the opinion of the department head, such offense impairs the future effective performance of the employee; otherwise it shall be imposed only when the management has exhausted all reasonable efforts to improve work performance or other conditions affecting the job performance of said employee.

There are certainly disputed issues as to whether the Commission violated any city ordinance in not applying progressive discipline. Therefore, the court need not even reach the question of whether a violation of this city ordinance would rise to the level of a due process violation. Plaintiff has not established that he is entitled to summary judgment for the Commission's failure to apply principles of progressive discipline in his case.

### B. *Vagueness of Work Rules*

Secondly, plaintiff asserts that the Department's work rules are so vague as to amount to a failure of notice as required by the Due Process Clause. It is well settled that a statute that either forbids or requires the doing of an act in terms so vague that "men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process law." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). Plaintiff was accused of violating three work rules.[3] He now contends that these

---

**3.** Plaintiff was charged with violating rules 2.65, 2.33 and 1.01 of the Work Rules of the Department of Public Safety:

Work Rule 2.65
Employees shall not be negligent in the control of contraband.
Work Rule 2.33
Every employee of the department shall familiarize herself/himself with and conform to rules, regulations, directives, and standard operating procedures of the department.

Work Rule 1.01
The demands for Department of Public Safety services are many, varied and often extreme. Employees shall meet these challenges by responding in an appropriate manner to whatever situation they encounter by:
C. Requesting the assistance of supervisors when the appropriate action required is either not clear or possible under the circumstances or not within the scope of authority of the employee of whom action was requested.

rules are too vague to create a standard of conduct which is capable of objective interpretation and enforcement. *Marshall v. City of Atlanta*, 614 F.Supp. 581, 584 (N.D. Ga.1984) (Hall, J.). It is clear that the prohibition against vagueness extends to administrative regulations affecting conditions of governmental employment. *Id.; Bence v. Breier*, 501 F.2d 1185 (7th Cir. 1974).

■ However, this court finds that plaintiff's alleged conduct was so far outside the realm of acceptable police behavior that despite some arguably vague language in the departmental rules the plaintiff had adequate notice that he could be disciplined for such conduct. *Marshall*, 614 F.Supp. at 584. The void for vagueness doctrine simply means that a person may not be held responsible for conduct which violates a rule where that person could not have reasonably understood that his contemplated conduct was proscribed. *Allen v. City of Greensboro*, 452 F.2d 489 (4th Cir. 1971); *Marshall*, 614 F.Supp. at 584.

■ Plaintiff was charged with buying cocaine on the street with his own money, giving said cocaine to an informant for his personal consumption, failing to report the purchase and distribution of said cocaine, knowingly allowing an informant to retain a portion of cocaine seized, and failing to report the illegal narcotic activities of a fellow police officer. Defendants' Exhibit A; Disciplinary Complaint. Plaintiff could not have been surprised that such activities violated the rules of the police department, violated his sworn duty as a law enforcement officer, compromised his ability to effectively combat crime on the streets of Atlanta, and exposed him to punishment from the Public Safety Commission. *Allen* and *Marshall*, supra. Therefore, the departmental work rules in question are not unconstitutionally vague as applied to Officer Byrd.

C. *Lack of Pre–Suspension Due Process*

■ Finally, plaintiff complains that he was denied due process when he was suspended without pay for 148 days without a hearing. It is clear under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and *Everett v. Napper*, 833 F.2d 1507 (11th Cir.1987), that an employee is entitled to an opportunity to be heard before he or she may be suspended without pay. Therefore, the City of Atlanta may be held liable for its failure to afford plaintiff a pre-suspension hearing.

However, plaintiff has not produced sufficient evidence that defendants Napper, Redding and Derico were sufficiently involved in that decision to hold any of them individually liable on a motion for summary judgment.

Because the propriety of plaintiff's discharge has yet to be determined the court cannot make a determination as to damages for the due process violation. If plaintiff was properly discharged, he may not be awarded back pay as damages for the procedural due process violation. *Wilson v. Taylor*, 658 F.2d 1021, 1035 (5th Cir. Unit B.1981); *County of Monroe Fla. v. U.S. Dept. of Labor*, 690 F.2d 1359 (11th Cir.1982). For plaintiff to recover more than nominal damages for deprivation of procedural due process he must show actual compensable injury. *Id.*

CONCLUSION

Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is GRANTED as to the City of Atlanta's liability for failure to provide a pre-suspension hearing for officer Byrd. All other aspects of plaintiff's motion for summary judgment including any request for damages are DENIED.

So ORDERED.